BRENDA FULLER, Plaintiff-Appellant, *v.* LUTHER C. JUSTICE, Defendant-Appellee.

Second District No. 82—843

Opinion filed September 6, 1983.

Bryan J. O'Connor III, Bernard R. Nevoral, and James A. Corrigan, all of Nevoral & Corrigan, Ltd., of Chicago, for appellant.

Donald Mateer, of Mateer & Erickson, of Rockford, for appellee.

JUSTICE LINDBERG delivered the opinion of the court:

Plaintiff, Brenda Fuller, a minor, appeals from the order of the circuit court of Winnebago County granting defendant's motion for summary judgment. Plaintiff's count I alleged wilful and wanton actions or omission of defendant which caused plaintiff's injuries, and count II was based on a negligence theory patterned on *Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614. After defendant filed an answer and depositions were taken, defendant filed a motion for summary judgment. Plaintiff filed her response to defendant's motion, and the court held a hearing on the motion. By letter opinion, the court granted defendant's motion specifically ruling that "[u]pon review of pleadings, interrogatories, and depositions, the court finds that the plaintiff had to appreciate the risk of standing on the log." The court entered an order granting defendant's motion. Plaintiff filed a timely notice of appeal. We affirm.

On December 14, 1980, in the afternoon, plaintiff was playing with defendant's daughter, Cecilia, at defendant's residence. Plaintiff's family and defendant were neighbors living across the street from one another. At the time of the injury, Cecilia was eight and plaintiff was 14 years old. When she was very young, plaintiff had contracted spinal meningitis. As a result of the illness, plaintiff remained out of school for two years, but she never missed a grade level. While at the time of trial she was in a grade two years younger than her age group, she maintained a "C" average in school and had never been set back nor had she failed to pass any grade level. Plaintiff testified she had previously suffered seizures (epilepsy) and was taking Phenobarbital and Dilantin during the period surrounding the day she was injured.

In her deposition, plaintiff testified that on the day of the accident Cecilia went inside the house to go to the bathroom, and then called to her from inside the house to come to the bedroom window. Responding to her friend's call, plaintiff walked to the window and on her own initiative stood on a tree stump that was positioned directly under the window. Plaintiff testified that the round part of the log was on the ground and she noticed the dirt underneath the log was uneven prior to stepping on top of it. She also testified she noticed the bottom of the log had no bark and was smooth. While standing on the log, she kept both feet on the log's surface and held onto the windowsill. She was on the log for several minutes and had concluded her conversation with Cecilia when she fell. Plaintiff did not know why the log moved, but she testified her weight was centered and that she did not shift her weight or move her feet prior to the fall. No one else observed plaintiff when she fell.

Plaintiff stated she had never before sat or stood on a log or any other similarly round object and was not aware that logs could roll. As a result of the fall, plaintiff was operated on and pins were placed in her arm. The injury precludes her participation in some sports, and she was excused by her doctor from gym activities during both 1981 and 1982.

Joan Justice, defendant's wife, in her deposition testified that she did not see plaintiff fall, but went outside to help plaintiff and found her on the ground three to four feet from the house. After the fall, the log was between plaintiff and the house. Justice said the two logs on her property came from two front-yard trees which were cut down. The family used these stumps as outdoor seats in the summertime. In addition, Justice testified that neighborhood children periodically would come on to her property and would play on the logs, and that she and her husband would tell them to get off the stumps because "[w]e

wouldn't want them to fall or hurt themselves." No one was ever injured on these stumps prior to plaintiff's fall.

The deposition testimony of defendant mirrored his wife's statement that neighborhood children frequented the premises: "just about every kid in the neighborhood has stood on them at one time or another." Defendant stated he thought plaintiff had stood on the stump prior to the day she was injured. Defendant testified he had to order the kids to get off the stump on numerous occasions and had seen them jump off the logs in the past, but had never seen children roll the logs.

■■ Plaintiff frames the issue before this court as "whether a genuine issue of material fact exists as to whether the minor plaintiff appreciated the specific risk involved which would preclude entry of summary judgment?" Plaintiff challenges defendant's attempt in his brief to broaden the issues here beyond the narrow issue described by plaintiff. Plaintiff implies that this court cannot discuss whether the stump was a dangerous condition or whether young children habitually played on the logs because the trial court did not expressly rule on these issues. However, an appellate court can affirm the trial court on any basis that appears in the record. (*Stern v. Stern* (1982), 105 Ill. App. 3d 805, 809, 434 N.E.2d 1164, 1168; *Illinois Bell Telephone Co. v. Dynaweld, Inc.* (1979), 70 Ill. App. 3d 387, 394, 388 N.E.2d 157, 162.) Since these points were raised at the trial level, they were valid bases for affirming the trial court's order even though the trial judge did not specifically discuss these points in that order.

■■■ Certain well-settled principles apply to trial court rulings on summary judgment motions. The sole function of the court reviewing the trial court's entry of summary judgment is to determine whether the lower court correctly ruled that no genuine issue of material fact had been raised, and if none was raised, whether judgment was correctly entered as a matter of law. (*Coomer v. Chicago & North Western Transportation Co.* (1980), 91 Ill. App. 3d 17, 414 N.E.2d 865.) If a genuine issue of material fact exists, a motion for summary judgment may not be granted. *Manahan v. Daily News-Tribune* (1977), 50 Ill. App. 3d 9, 365 N.E.2d 1045.

■■■ In determining whether there is a genuine issue of material fact, a trial court is required to consider the pleadings and admissions, affidavits in support of and in opposition to the motion, and any other evidence before the court. (*Manahan v. Daily News-Tribune* (1977), 50 Ill. App. 3d 9, 365 N.E.2d 1045.) Further, the trial court must construe the pleadings and affidavits most strictly against the moving party and most liberally in favor of the opponent in ruling on the motion. (*Bard v. Harvey* (1979), 74 Ill. App. 3d 16, 392 N.E.2d 371.) Since the opposing

party has the right to a trial if there is a genuine issue of fact, the right of the moving party to summary judgment must be clear and free of doubt, and the granting of the motion cannot be a matter of judicial discretion. (*Manahan.*) While a party against whom a motion for summary judgment has been filed need not prove his case at this preliminary stage, he is required to present some factual basis that would arguably entitle him to a judgment under the applicable law. (*Martin v. American Legion Post No. 784* (1978), 66 Ill. App. 3d 116, 383 N.E.2d 672.) Facts unrelated to the essential elements of the plaintiff's cause of action are immaterial, and regardless of how sharply controverted, their presence in the record will not warrant denial of a motion for summary judgment. (*Mid States Vending Service, Inc. v. C.A.P., Inc.* (1977), 45 Ill. App. 3d 947, 360 N.E.2d 448.) With these principles in mind, we consider the merits of plaintiff's appeal.

Count II of plaintiff's complaint asserts that defendant breached a duty owed to plaintiff on the basis of the rule established by the Illinois Supreme Court in *Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614. In *Kahn*, the court held that the possessor of land is liable for injuries sustained by children when the injury is caused by a dangerous condition on the property and the owner knew or should have known that young people habitually frequent the area. This decision and its progeny have created a four-pronged test for the imposition of liability. A defendant landowner may be liable for harm to children on his or her premises if the plaintiff shows that (1) the landowner knew or should have known that the children habitually frequented the premises; (2) a dangerous condition was present on the land; (3) the dangerous condition was one that was likely to cause injury to children because of their inability to appreciate the risk involved; and (4) the burden of remedying the condition was slight when compared with the risk involved. *Kahn;* see also *Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316; *Niemann v. Vermilion County Housing Authority* (1981), 101 Ill. App. 3d 735, 428 N.E.2d 706; *Whitcanock v. Nelson* (1980), 81 Ill. App. 3d 186, 400 N.E.2d 998.

To ascertain if a duty exists, the threshold determination in any application of the *Kahn* test must be whether plaintiff has established the existence of a dangerous condition on the land. For purposes of this test, a dangerous condition is a condition which is likely to cause injury to children, who, by reason of their immaturity, might be incapable of appreciating the risk involved. (*Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316.) Thus, the conditions might be dangerous for purposes of this analysis even though the condition would not involve an unreasonable risk of harm to adults. (*Corcoran.*) However, if

the condition involved obvious risks which children generally would be expected to appreciate and avoid, the landowner is under no duty to remedy the condition. (*Corcoran; Pasierb v. Hanover Park Park District* (1981), 103 Ill. App. 3d 806, 431 N.E.2d 1218; *Whitcanock v. Nelson* (1980), 81 Ill. App. 3d 186, 400 N.E.2d 998.) This is true even where the owner or occupier of land knows that children frequent the premises. As a landowner is not an insurer of the safety of children, he is not required to guard against the ever present possibility that children will injure themselves on common or obvious conditions. *Corcoran; Driscoll v. C. Rasmussen Corp.* (1966), 35 Ill. 2d 74; *Bonamie v. Welsh* (1981), 95 Ill. App. 3d 349, 420 N.E.2d 243; see also *Feldscher v. E & B, Inc.* (1983), 95 Ill. 2d 360.

■11 Applying the foregoing principles of law to the case at bar, we conclude that the stump did not constitute a dangerous condition on the land. In *Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316, the two-year-old child fell into a ditch in a park near his home and suffered severe brain damage. In concluding that the ditch did not constitute a dangerous condition, the Illinois Supreme Court stated that the plaintiffs had failed to sustain their burden of alleging sufficient facts describing the condition to enable the trial court "to conclude that the condition exposes children to risks greater than those which normally attend their daily lives." (73 Ill. 2d 316, 328.) For liability to attach, the *Corcoran* court held, the cause of injury must be "a *dangerous* condition on the premises," and not merely a condition capable of causing injury. (73 Ill. 2d 316, 326.) In *Bazos v. Chouinard* (1981), 96 Ill. App. 3d 526, 529, 421 N.E.2d 566, 568, this court recently reiterated the principle that an instrumentality or product does not become inherently dangerous merely because there is an abuse of it, or it is used for a wrongful purpose. (See also *Donehue v. Duvall* (1968), 41 Ill. 2d 377.) In practice, courts have labeled very few conditions as inherently dangerous. Explosives and poisons are inherently dangerous (*Watts v. Bacon & Van Buskirk Glass Co.* (1958), 20 Ill. App. 2d 164, 168, 155 N.E.2d 333, 335, *aff'd* (1959), 18 Ill. 2d 226), but a stick (*Niemann v. Vermilion County Housing Authority* (1981), 101 Ill. App. 3d 735, 738, 428 N.E.2d 706, 709); a sickle (*Hancock v. Luetgert* (1976), 40 Ill. App. 3d 808, 810, 353 N.E.2d 165, 168); barbed wire (*Snow v. Judy* (1968), 96 Ill. App. 2d 420, 239 N.E.2d 327); and a boomerang (*Maramba v. Neuman* (1967), 82 Ill. App. 2d 95, 104, 227 N.E.2d 80, 83) are not. Therefore, we conclude, as plaintiff herself conceded, that the tree stump was not inherently dangerous.

■ ■ An instrumentality, though not in itself dangerous, however, may become so when joined with other nondangerous instrumen-

talities or surroundings. (*Niemann v. Vermilion County Housing Authority* (1981), 101 Ill. App. 3d 735, 739, 428 N.E.2d 706, 710; *Bazos v. Chouinard* (1981), 96 Ill. App. 3d 526, 421 N.E.2d 566; *Novak v. C.M.S. Builders & Developers* (1980), 83 Ill. App. 3d 761, 763-64, 404 N.E.2d 918, 920.) A condition in its surrounding may so enhance the risk to unsuspecting children as to constitute a danger to them. (*Bazos.*) The burden rests with the plaintiff to allege facts which demonstrate that the combination of surroundings creates a risk greater than that to which children are exposed in their everyday lives. (*Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316, 328.) In plaintiff's complaint, she does not allege anything more than the fact that stumps were present in defendant's yard. She does not cite any other instrumentality or condition which when combined with the tree stump created a dangerous instrumentality. In the absence of facts from which the trial court here could conclude either that the stump was inherently dangerous alone or became dangerous in combination with other conditions present on defendant's property, plaintiff has failed to establish a duty under *Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614. The trial court here properly granted defendant's summary judgment motion, for a *Kahn* cause of action is properly decided by summary judgment when the trial court can determine as a matter of law that the condition is not dangerous (*Prince v. Wolf* (1981), 93 Ill. App. 3d 505, 510, 417 N.E.2d 679, 682; *Cole v. Housing Authority* (1979), 68 Ill. App. 3d 66, 72, 385 N.E.2d 382, 387), and that no duty is owed to plaintiff. *Barnes v. Washington* (1973), 56 Ill. 2d 22.

While the absence of a dangerous condition is alone fatal to a *Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, cause of action, we proceed nonetheless to an analysis of plaintiff's contention regarding the third element of the *Kahn* test. Plaintiff emphasizes several facts from the record to support her position that she was unable to perceive the risk of standing on the log. Plaintiff alludes to the fact that she contracted spinal meningitis as a child and as a consequence, was forced to stay out of school for two years. Plaintiff fails, however, to show how her previous illness affected her ability to perceive the risk of standing on the log. To the contrary, the record indicates that plaintiff is of average intelligence and has never failed to pass any grade level. Nothing in the record suggests plaintiff suffered any mental impairment as a result of her illness. Thus, her prior medical condition is irrelevant to the determination whether she could perceive the risk involved in standing on the stump.

In addition to her prior medical history, plaintiff also argues that her testimony indicates she had no familiarity with logs, had never

stood on one or on a similarly round object, and was unaware that a log could roll. This fact, plaintiff argues, in combination with the testimony of defendant and his wife that they had admonished children in the past not to play on the logs because of the possibility of injury demonstrates that a material fact exists whether plaintiff appreciated the risk.

The court in *Kahn* stated that liability exists when young children because of their immaturity are incapable of appreciating the risk attending the dangerous agency. (*Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, 624; see also *Feldscher v. E & B, Inc.* (1983), 95 Ill. 2d 360, 366-67.) This test is objective for it does not focus on the specific plaintiff's appreciation of risk, but rather on the risk appreciated by young children of a similar age and experience. (See *Niemann v. Vermilion County Housing Authority* (1981), 101 Ill. App. 3d 735, 738, 428 N.E.2d 706, 709; *Warchol v. City of Chicago* (1979), 75 Ill. App. 3d 289, 296, 393 N.E.2d 725, 731.) Applying an objective test to the case at bar, the trial court's conclusion that the plaintiff had to appreciate the risk of standing on the log is not erroneous. While plaintiff testified she was not aware a log could roll, no reasonable child and especially a 14-year-old teenager would be unaware of a log's propensity to roll. Plaintiff herself testified in her deposition that before she stood on the log, she observed that the dirt under the log was uneven. Thus, while plaintiff testified she didn't appreciate the risk, we conclude as a matter of law that no similarly situated child could fail to appreciate the risk of standing on the log.

■■■ Plaintiff next maintains that the trial court did not enter judgment as to count I which alleges that defendant's wilful and wanton actions proximately caused her injury. However, defendant's motion for summary judgment requested judgment on plaintiff's complaint and did not differentiate between count I and count II. Similarly, the trial court's order entered judgment in favor of defendant and against plaintiff and did not differentiate between the two counts. We conclude, therefore, that the trial court entered summary judgment as to both counts.

■■■ Plaintiff offers minimal argument and cites only one case concerning her wilful and wanton count. The well-established rule is that bare contentions without argument or citation of authority do not merit consideration on appeal. (*Village of Roxana v. Costanzo* (1968), 41 Ill. 2d 423; *Millburn Mutual Insurance Co. v. Glaze* (1980), 86 Ill. App. 3d 1055, 410 N.E.2d 295.) Moreover, it has also been held that contentions supported by some argument, but by absolutely no authority do not meet the requirements of Supreme Court Rule 341(e) (73 Ill.

2d R. 341(e)). (*Wilson v. Continental Body Corp.* (1981), 93 Ill. App. 3d 966, 418 N.E.2d 56.) Reviewing courts are entitled to have the issues clearly defined and to be cited pertinent authority; they are not a depository into which an appellant is to dump the entire matter of pleadings, court action, argument and research. (*In re Marriage of Snow* (1980), 81 Ill. App. 3d 1148, 401 N.E.2d 1352; *Thanopoulos v. Pickens* (1980), 87 Ill. App. 3d 906, 409 N.E.2d 477; see *Morse v. Nelson* (1977), 48 Ill. App. 3d 895, 363 N.E.2d 167.) The court is empowered to dismiss an appeal when the appellant's presentation is so inadequate that an informed review of the issues is impossible. (*Wilson.*) Since plaintiff has failed to offer more than conclusory arguments that a genuine issue of material fact exists concerning her wilful and wanton count, we would be justified in considering her argument waived.

 █ In any event, we believe the trial court properly granted summary judgment as to plaintiff's wilful and wanton count. There can be no recovery in tort unless the defendant has breached a duty owed to the plaintiff. (*Boyd v. Racine Currency Exchange, Inc.* (1973), 56 Ill. 2d 95.) The existence of a legal duty is a question of law to be determined by the trial court. (*Pelham v. Griesheimer* (1982), 92 Ill. 2d 13; *Barnes v. Washington* (1973), 56 Ill. 2d 22; *Johnson v. Hoover Water Well Service, Inc.* (1982), 108 Ill. App. 3d 994, 439 N.E.2d 1284.) Summary judgment is proper if a plaintiff's complaint based on wilful and wanton misconduct fails to demonstrate a duty to act on the part of the defendant. *Chisolm v. Stephens* (1977), 47 Ill. App. 3d 999, 1004, 365 N.E.2d 80, 84.

 On the facts as pleaded in plaintiff's complaint, she was a social guest upon defendant's premises. A social guest is a person who goes onto the property of another for companionship, diversion and enjoyment of hospitality. (*Fugate v. Sears, Roebuck & Co.* (1973), 12 Ill. App. 3d 656, 673, 299 N.E.2d 108, 121.) A social guest is treated as a licensee and not as an invitee. *Ciaglo v. Ciaglo* (1959), 20 Ill. App. 2d 360, 156 N.E.2d 376.

 A property owner has no duty to make his premises safe for a licensee. His only duty is to warn a licensee of concealed defects that are known to the owner and to refrain from injuring him wilfully or wantonly. (*Gregor v. Kleiser* (1982), 111 Ill. App. 3d 333, 443 N.E.2d 1162; *DuMond v. City of Mattoon* (1965), 60 Ill. App. 2d 83, 91, 207 N.E.2d 320, 324.) Wilful and wanton conduct is a course of action which shows either a deliberate intention to harm or an utter indifference to, or conscious disregard for, the safety of others. (*Gregor v. Kleiser* (1982), 111 Ill. App. 3d 333, 336, 443 N.E.2d 1162, 1165; *Kapka v. Urbaszewski* (1964), 47 Ill. App. 2d 321, 324, 198 N.E.2d 569,

571.) To sufficiently plead wilful and wanton conduct, a plaintiff must allege facts demonstrating a duty of defendant and a breach of that duty which proximately caused the plaintiff's injury. (*Hubbard v. Aetna Insurance Co.* (1976), 37 Ill. App. 3d 666, 669, 347 N.E.2d 396, 399.) The mere conclusory allegation of wilful or wanton conduct is not sufficient. *Booker v. Chicago Board of Education* (1979), 75 Ill. App. 3d 381, 394 N.E.2d 452; *Clay v. Chicago Board of Education* (1974), 22 Ill. App. 3d 437, 318 N.E.2d 153.

■ Here, plaintiff's complaint alleges three wilful and wanton acts: (1) defendant's providing to plaintiff of a loose stump which defendant knew was unbalanced and defective; (2) defendant's failure to warn plaintiff of the stump's defective condition; and (3) defendant's retention of the stump on his property when he knew children congregated there. Each of these three acts is predicated on the legal conclusion that the stump was defective and was a concealed defect. Plaintiff's allegation that defendant provided to plaintiff a defective stump and failed to warn her of the stump's condition fails to establish a duty absent the existence of a defective condition or a concealed defect. Similarly, defendant was under no duty to remove the stump from his property even though he was aware that children frequented the premises unless the stump was a defective condition or a concealed defect. Based upon our earlier discussion of count II, however, we conclude that the stump was not dangerous or defective. Furthermore, we hold that the stump was not a concealed defect. Rather, the uncontroverted fact indicates that plaintiff recognized the stump was on uneven ground and plaintiff has failed to establish any other basis upon which we could conclude that the stump was more dangerous than any other stump. (See *Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316, 328.) To the contrary, the risk of falling off the stump here was that which inheres in standing on any stump and which was obvious to any child. In the absence of any disputed issues of material fact, we conclude that the trial court properly entered judgment in favor of defendant.

Accordingly, the judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

UNVERZAGT and REINHARD, JJ., concur.